UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN -- SOUTHERN DIVISION


GERALD SHIELDS
      Plaintiff,


 -vs-                            Case No. 08-14999
                                       Hon. Paul D. Borman
MERCHANTS & MEDICAL             Magistrate Judge: R. Steven Whalen
CREDIT CORPORATION, INC.,
*et al.,*
      Defendants.


## MOTION FOR PARTIAL SUMMARY JUDGMENT

For the reasons set forth in the accompanying brief, Mr. Shields moves for entry of partial summary disposition under Fed.R.Civ.P. Rule 56.


## BRIEF IN SUPPORT OF
## MOTION FOR PARTIAL SUMMARY JUDGMENT

### Introduction

This case arises from Merchants & Medical Credit Corporation, Inc.'s ("M&M") efforts to collect on an $85.00 debt which it claims that Mr. Shields incurred to St. John's Oakland Hospital ("St. John's") for a medical procedure performed in October of 2001.  M&M claims that Mr. Shields still owes this money, and claims that it may continue to collect this debt in the absences of any proof of its validity until Mr. Shields can disprove its validity.  For his part, Mr. Shield's own records for the transaction show no unpaid bills, and the service provider who M&M claims to have originated the bill maintains that Mr. Shields owes nothing.

At this time, there is no dispute between the parties that M&M has sought to collect this debt since 2002 using the credit reporting system, that Mr. Shields disputed the debt to M&M from the

date of his very first verbal contact with M&M, and that M&M continued to report this debt on his consumer report. Likewise, there appears to be no dispute about what occurred in M&M's collection calls or letters. Rather the principal dispute between the parties is whether Mr. Shields owes this debt at all and whether M&M violated the FDCPA when it continued to collect this debt after being confronted with the fact that Mr. Shields had never received bill and that his insurance company had paid for the medical services for which M&M sought to collect.

While Mr. Shields offers a number of legal theories of liability, at heart this case turns on single question: Whether a debt collector may continue to collect a debt in "blind reliance" on facially deficient information after receiving a *bona fide* dispute of the debt from the consumer.

In this case, M&M's *blind reliance* persists even after multiple disputes and a year of litigation which has included a 30(b)(6) deposition of St. Johns – M&M's own putative client – in which St. John's hospital unequivocally declared that Mr. Shields owed it no money. There is simply no record evidence to support M&M's position that Mr. Shields owes anything to anyone for this debt. M&M's obdurate refusal to acknowledge the legitimacy of Mr. Shield's dispute , as well as its own duties under the FDCPA continues even though

&#10003; The parties received 30(b)(6) testimony **from St. John's**, stating unequivocally that Mr. Shields does not owe this debt.

&#10003; M&M has no record proof that Mr. Shields actually owes this debt.

&#10003; M&M has no documentation of the specific services that gave rise to this debt or the persons who provided those services.

&#10003; M&M does not have a copy of any bill to Mr. Shields for these services, or any evidence that such a bill was ever sent to him by anyone.

&#10003; M&M never actually communicated with any individual or entities that rendered the

services which are the subject of the debt.

✓      When confronted by Mr. Shields with the fact that all his medical bills for this procedure had been paid by his insurer, M&M took no steps to ascertain how this debt arose or whether it had already been paid by the insurer.

✓      When confronted *in litigation* with the fact he had never received a bill, M&M has still not produced a bill.

✓      In the absence of any legitimate proof that Mr. Shields owes this debt, M&M has ratified its entire course of conduct, both as to the propriety of its collection efforts and its claims that Mr. Shields is responsible.

While Mr. Shields continues to complete his discovery, there is no genuine issue of material fact that M&M has violated the FDCPA by 1) collecting money that Mr. Shields does not owe, 2) falsely reporting the amount as due and the account as "delinquent" to the credit reporting agencies, and 3) misrepresenting Mr. Shield's rights under the Fair Credit Reporting Act.

Mr. Shields moves for judgment as to these violations[1] as well as a declaration that he does not owe the underlying account. His motion is supported by his Declaration, attached as Exhibit B, as well as deposition testimony and attached documents.

## Statement of Facts

1. **M&M has no evidence or any basis for its continued belief that Mr. Shields owes money on the account for medical procedures performed by St. Johns.**

At the heart of this case is M&M's claim that Mr. Shields owes money on a St. Johns account and the actions that Defendants took in their attempts to collect the account. See e.g. Clark v.

---

[1]Mr. Shields seeks only statutory damages for his claims under the FDCPA. Statutory damages are available even in the absence of actual damages suffered by the consumer. *Fed. Home Loan Mortgage Corp. v. Lamar*, 503 F.3d 504, 513 (6th Cir.2007).

*Capital Credit & Collection Services, Inc.,* 460 F.3d 1162, 1172 (9th Cir. 2006)(collection following insufficient verification raises triable issues under §1692d and 1692f(1)).   M&M has no original documents from the creditor (*Id.*), none whatsoever and none were provided to M&M along with the account when it was placed in 2002 (*Id.*).  Similarly  M&M has no record that Mr. Shields was ever sent a bill from the creditor (*Id.* p.  194  L.14-19).   M&M has not produced a single witness with knowledge about the origins of this mystery account and no admissible evidence which could raise a triable issue as to whether Mr. Shields owes this debt.  Rather,  M&M has staked its entire claim that Mr. Shields owes the account on 1) a single notation in its collection log from June of 2002 from an entity it has failed to identify with any specificity and 2) a long-ago destroyed email from that same entity in 2008.  See, Testimony of  Gregory Church, M&M's corporate deponent, Exhibit C, p. 146-148.

2.    **St. Johns Hospital Records Prove the Entire Bill Was Paid**

Were it not enough to show that M&M has *no affirmative proof* to support its claim that Mr. Shields owes the debt, Mr. Shields sunk MM&M's gossamer defense he deposed the only entity capable of providing first hand knowledge of the account.  During discovery, Mr. Shields deposed St. Johns – M&M's putative client – and received unequivocal testimony stating that Mr. Shields owes nothing to St. Johns.   After fully researching the account history, St. Johns corporate representative Michael Richardson,[2] concluded – consistent with Mr. Shields assertions to M&M's representatives – that Mr. Shields' insurance company made full payment on the services he received from the hospital in 2002, that St. Johns never sent Mr. Shields a bill for any unpaid services for that visit, and that no account was assigned to any debt collection agency relating to the services

---

[2]  Mr. Richardson is a Coordinator in the Patient Financial Services Department for St. John Health Systems.  St. Johns Hospital is a part of the St. John Health Systems (Richardson, p. 10, Exhibit D).

performed for Mr. Shields  (*Id.*, p.20).

Simply put, Mr. Shields  does not owe any money for services to the hospital (Richardson, p. 19-20, Exhibit D), and if M&M claims that the debt is owed to St. Johns, then it is wrong.

**3.     M&M refuses to acknowledge its obligations to address valid disputes by consumers and to provide accurate information concerning the debt.**

Most troubling is M&M's continued claim that Mr. Shields owes the debt (Church Deposition at p. 190 at line 14-17) even though it has no documentation for the debt and is itself confused as to the identity of the creditor on the account.    In its collection calls to Mr. Shields, M&M asserted that the debt was owed to St. Johns (Shields ,Exhibit B ¶ 13).  When Mr. Shields asked M&M to provide information concerning the account, M&M outright refused and instead directed him back to St. Johns to obtain information.[3]  This experience closely tracks that of Mr. Shields attorney in attempting to secure this information from M&M's attorney.  In the face of Plaintiff's counsel's direct queries about the identity of the creditor, M&M refused to provide a straight answer (see attached emails to Attorney Olson requesting that she identify the true name of  to identify M&Ms position as to the identity of the creditor, Exhibit F).

Yet the only document ever produced by M&M on the account is entitled "Itemized Statement" and bearing the name "St. John Oakland Hospital/CRNA" (Exhibit E) – not St. Johns Hospital[4].    And throughout the 30(b)(6) deposition of M&M, Mr. Church took varied positions as

---

[3]While Plaintiff maintains that it was M&M's obligation to address the disputes of Mr. Shields, the fact of the matter is that Mr. Shields ultimately did take this up with St. Johns at a 30(b)(6) deposisition.  In that deposition, St. John disclaimed any knowledge of the debt, any balance owed by Mr. Shields or any placement of the debt with M&M.  Notwithstanding these binding testimony from St. John's, M&M still refuses to acknowledge that the debt is not owed.

[4]  When presented with the document, Mr. Church testiifed he did not recognize it, had no idea how the document came into the possession of M&M and could not identify who sent it (Church, p. 171-172).

to the identity of the owner of the debt . Initially, he testified that the debt belonged to " St. John

Oakland Hospital/CRNA Anesthesiologists" (Church deposition Exhibit C at 136).[5]  Later, he

acknowledged a lack of knowledge if the contract of placement was with the hospital or a separate

entity (Church deposition Exhibit C at 140 and 144).  Later, Mr. Church stated that M&M was

relying its client for the assertion that the debt was still owed, and that it was owed to St. John

Oakland Hospital/CRNA   (Church deposition Exhibit C at 185-186).

```
 5   [By Mr. Lyngklip]: As you sit here today, if you wanted to know whether
 6       Jerry Shields owed this money to St. John's Oakland
 7       Hospital -- right?
 8   A   [By Mr. Church]: Yes.
 9   Q    Who would you ask?
10   A   St. John -- when you say -- I'm sorry.  Back up.  Are you
11       asking St. John Oakland Hospital, or St. John Oakland
12       Hospital/CRNA?
13   Q   Well, that's what I want to know.  My problem is this:  I
14       don't know whether there's a separate company that I need
15       to be talking to.  I took the Deposition of St. John
16       Hospital, and they said that Mr. Shields doesn't owe any
17       money, and that they got paid in full, so I'm still at
18       the point where I'm trying to figure out how to figure
19       out whether or not Mr. Shields owes this money, and what
20       I'm understanding you to say is all you're doing is
21       relying on the e-mail that you got.  Is that correct?
22   A    We're relying on our communication with our client,
23       St. John Oakland Hospital/CRNA, and, yes, we're relying
24       on that information to determine that the bill -- or the
25       balance is still owed.
                              186
 1   Q   So I've got a communication from St. John Oakland
 2       Hospital that says that CRNA is a different company.
 3   A    Okay.
 4   Q   And that Mr. Shields doesn't owe St. John Hospital any
 5       money, so as we sit here today can you tell me whether
 6       Mr. Shields owes St. John Hospital proper any money?
 7   A   **Our records don't indicate that he owes St. John Oakland**
 8       **Hospital money.  Our records indicate that he owes**
```

---

[5]Mr. Richardson testified on behalf of St. Johns that this entity was not in fact the same as St. John's.  Richardson Deposition Exhibit D at 23.

9       St. John Oakland Hospital/CRNA money.

Church, p. 185-186, Exhibit C (emphasis added).   After taking this position, Mr. Church claims Mr.

Church claimed that St. Johns and CRNA were  one and the same (*Id*. p. 194, 4-13).  See also

Church p. 190.  Ultimately,  when pressed to identify with specificity the corporate name of CRNA,

an address and a corporate contact, and after a long off the record discussion with its attorney that

M&M finally changed course again and  settled on St. Johns as the creditor (*Id*. p. 194 L. 4-13).

Against the backdrop of this self contradictory testimony and St. John's outright disavowed

of any association with the debt being collected, it is remarkable that M&M refuses to acknowledge

any obligation to verify the debt or provide information concerning the creditor.[6]

**4.    Defendants' Collection Efforts**

M&M uses credit reporting as one of its tools to collect accounts (Church . p. 64,- p.65,

Exhibit C).  It started reporting the underlying account to Mr. Shields credit report in 2002 and it

remained on his  report through 2008 as a "delinquent,"  "collection account"   (Experian, Equifax

and Trans Union reports,  Exhibit H).

Mr. Shields discovered the account on his report in  2007.  Mr. Shields had never been billed

by St. Johns Hospital for $85.00 (Richardson, p. 19-20, Exhibit D) and to that point, had never

received any correspondence from M&M on the account.   In December of 2007, Mr. Shields called

M&M seeking  information about the account and requested that it provide written documentation

about the account (Shields ¶ 8, Exhibit B).  In that call, he spoke to a debt collector who identified

herself as April Baker[7].  She told Mr. Shields he owed $85.00 on the account and demanded that she

---

[6]C.f. 15 U.S.C. § 1692g(a)(2).

[7]  M&M has acknowledged that the three individual defendants were employees of
M&M.  It was later disclosed that April Baker's true name is April Broziak. In the first January
call, the debt collector went by the name of Stephanie Sage- -her true name is Stephanie Saylor.

pay (*Id*. ¶ 7).  She refused to provide him with anything in writing on the grounds that it was too expensive and demanded that he pay (*Id*. ¶ 9).  Mr. Shields followed up with two more lengthy calls with M&M, one in the beginning January of 2008 and one in late January.  He spoke to a collector who identified herself as Stephanie Sage.  During the course of these calls, M&M identified the original creditor as St. Johns Hospital (*Id*.¶ 13) and that the bill was for services received in October of 2001[8].  She claimed that there was $85.00 due and owing on the account and demanded that he pay (Shields ¶ 19).  Mr. Shields again asked M& M to provide him written documentation from the creditor and it refused.  It  directed him to call the hospital if he wanted more information (*Id*. 18).  At the end of January, Mr. Shields talked to a debt collector Carol Pody.  She too claimed that Mr. Shields owed money on the account and demanded that he pay (*Id*. ¶ 25).

During the course of the calls, Mr. Shields told M&M that he did not think that he owed the account (*Id*.¶ 15), and requested that it stop reporting the false information (*Id*.¶ 16).  Mr. Shields acknowledged that he had been hospitalized by St. Johns but he  told M&M that either he had paid the bill or his insurance company had paid the bill in full (*Id*.¶ 14 & 26).  Without conducting any further investigation, collectors Sage and Pody continued to assert that he owed the money and demanded that he pay, often in hostile and aggressive tones.

Throughout the course of his dealing with M&M, Mr. Shields expressed concern about the harm to his credit standing from the information that M&M was reporting to the bureaus.  In his call

---

The second January call was handled by debt collector Carol Pody, whose true name is Carol Robbins.  The individual defendants will be referred to herein by the names they assumed when they spoke to Mr. Shields.

[8]  The two  telephone calls in January 2008  were tape recorded by Mr. Shields with a hand held recording device..  The audio recording will be made available to the Court at the hearing on this motion.  Mr. Shields reviewed the audio recording in the course of preparing his affidavit and his statements as to the content of the calls were based upon his review of those recordings.

to M&M debt collector Stephanie Sage he requested that M&M remove the information from his report[9]. M&M refused and stated, through Ms. Sage, that the *only* way to get the debt off his credit report was to pay the debt (*Id.*¶ 17). Another M&M debt collector, Ms. Pody, told Mr. Shields that the account was not going to come off the credit report (*Id.*¶ 23). These are false statements of Mr. Shields rights under the Fair Credit Reporting Act.

Ultimately Mr. Shields made formal written disputes to M&M and the three credit reporting agencies (Exhibit H). In his letter to M&M, he again requested that M&M provide written documentation about the account so that he could determine who the original creditor was and what the claim was for. [10]

In response, M&M did not provide any documentation from the original creditor. Rather, it sent him two collection letters the first dated February 4, 2008 and the second dated March 3, 2008 (Exhibit J). Each letter falsely states that he owes $85.00 on the account and demands that he pay (*Id.*). Further, in response to Mr. Shields' dispute to the credit reporting agencies, it verified that all the information had reported previously was accurate (Exhibit K).

To this day, the account remains open and M&M is still trying to collect from Mr. Shields (Church p. 193, Exhibit C). It made an additional collection call in December of 2008 (Shields ¶ 29, Exhibit B). M&M maintains that Mr. Shields owes $85.00 on an account and that the creditor is St. Johns Hospital (Church p. 193 -194, Exhibit C). Despite that it has been credit reporting since 2002, M&M has not produced an original document from the creditor or witness in support of its

---

[9]    In January and February 2008, Mr. Shields made written demands to M&M, Trans Union, Equifax and Experian that the account be removed from his report.

[10]    Mr. Shields thought the debt might be on an account he had previously paid to M&M. He sent M&M his cancelled check and requested that it investigate whether it was the same account. It turned out the payment was for services he had been billed for and received in October of the prior year.

position that there is any money owed by Mr. Shields

## Standard of Review

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56.   The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case.  *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1476 (6th Cir. 1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317; 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).   In order to survive the motion, the non-movant must show sufficient evidence to create a genuine issue of material fact.  See *Klepper v. First Am. Bank*, 916 F.2d 337, 341-42 (6th Cir.1990) (citing *Celotex Corp. v. Catrett*, at 322.).  A mere scintilla of evidence is insufficient; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Id*. (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)).   Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## Law & Argument

Congress enacted the provisions of the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debts collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).  The provisions of the FDCPA sweep with "extraordinar[y]" breadth, *Frey v. Gangwish*, 970 F.2d 1516, 1521 (6th Cir.1992) and prohibit debt collectors from using any "false, deceptive, or misleading

representation[s] or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Liability under the act is determined using a "strict liability" standard. *Kistner v. Law Offices of Michael P. Margelefsky LLC*, 518 F.3d 433, 438 (6th Cir.2008). *Fed. Home Loan Mortgage Corp. v. Lamar*, 503 F.3d 504, 513 (6th Cir.2007)

There is no requirement under § 1692e that false representations be intentional or be actionable." *Pittman v. J.J. Mac Intyre Co.*, 969 F.Supp 609, 613 (D.Nev.1997). And "[a] single violation of the ... [FDCPA] is sufficient to establish civil liability." *Gibson v. Grupo de Ariel*, LLC, 2006 WL 42369, *1 n. 2, (N.D.Tex. Jan. 9, 2006) (citing *Taylor v. Perrin, Landry, deLaunay & Durand*, 103 F.3d 1232, 1238 (5th Cir.1997)).

1.    **The Court should enter its order declaring that Mr. Shields is not obligated to pay the debt in question to M&M.**

The primary question of fact for this Court, as to both Mr. Shields's claim for declaratory relief, as well as the violations of the FDCPA is Mr. Shield's responsibility for this debt.[11] In the absence of any evidence of Mr. Shield's responsibility to pay this debt, M&M has taken the position that Mr. Shields owes this money and M&M should pay the bill to it. This mixed determination of law and fact stands as the lynchpin in this case. And, at this juncture, there is simply no genuine issue that there is no basis for M&M's continued insistence that Mr. Shield's owes this debt or that he should pay it.

This Court has the authority to issue declaratory relief concerning the contractual rights of the parties. The Sixth Circuit recites the prudential considerations in favor of jurisdiction as follows:

---

[11]Regrettably, M&M has rejected every one of Mr. Shields's efforts to avoid having the Court resolve this issue. Throughout this litigation, Mr. Shields has requested that M&M stipulate that this debt was not owed. Ultimately, at M&M's 30(b)(6) deposition, M&M took the unsupported position that Mr. Shields still owes this $85.00 debt to St. John and that Mr. Shields should remit payment to M&M which still seeks to secure payment.

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201 (emphasis added). The Supreme Court has indicated that this act "confer[s] on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton*, 515 U.S. at 286, 115 S.Ct. 2137. In passing the act, Congress "created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants." *Id*. at 288, 115 S.Ct. 2137. District courts must be afforded substantial discretion to exercise jurisdiction "in the first instance, because facts bearing on the usefulness of the declaratory judgment remedy, and fitness of the case for resolution, are peculiarly within their grasp." *Id*. at 289, 115 S.Ct. 2137.

In considering whether a district court properly exercised this discretion, we have focused on the five factors first articulated in *Grand Trunk W. R.R. Co. v. Consol. Rail Co.*:

> (1) whether the declaratory action would settle the controversy;
> (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;
> (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for res judicata;"
> (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and
> (5) whether there is an alternative remedy which is better or more effective.

746 F.2d 323, 326 (6th Cir.1984) (formatting altered); see also Travelers, 495 F.3d at 271; *Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 812-13 (6th Cir.2004); *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir.2000). Applying these factors to this case demonstrates that the district court did not abuse its discretion in exercising jurisdiction pursuant to the Declaratory Judgment Act.

*Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (6th Cir.2008). When these five factors militate in favor of the issuance of declaratory relief, the Court may order that relief.

In this case, the resolution of this important question would assist the trier of fact in determining liability under the FDCPA. Likewise, because M&M continues to claim that Mr. Shields owes the debt which is still placed with M&M, the determination of this question will clarify the future relationship of these parties. Similarly, this remedy has been at issue since this complaint

was filed and is necessary in order to provide Mr. Shields reasonable surety in the fact that he need

not pay this bill to M&M.  At the same time, the entry of this judgment will not cause any friction

between the state and federal systems.  Finally, given M&M's insistence – even after a year of

litigation – that Mr. Shields should pay this debt, there appears to be no other way of dissuading

M&M from its position.

> For these reasons, Mr. Shields requests that this Court enter its order declaring that he need
not pay this debt to M&M.

**2.    There is no genuine issue of material fact that M&M blindly sought to collect a debt
which Mr. Shields does not owe through false representations.**

> At issue in this case is M&M's efforts to collect a debt which Mr. Shields did not owe.
These efforts fall within the ambit of multiple provisions of the FDCPA governing the collection of

debts which are not owed, and false representations.  Specifically, debt collectors may not collect

amounts which the consumer has not agreed to pay, 15 U.S.C. § 1692f(1).  Likewise, collectors may

not employ false representations as to the amount of the debt or its status.  15 U.S.C.§ 1692e(2).  Nor

may they communicate any information which should be known to be false.  15 U.S.C. § 1692e(8).

And, any form of false or misleading statement may give rise to liability.  15 U.S.C. §§ 1692e and

1692e(10).

> Claims involving misrepresentation to the consumer under Section 1692e are scrutinized
using the least sophisticated consumer standard.  *Hartman v. Great Seneca Financial Corp.,* 569

F.3d 606 (6th Cir. 2009) citing *Barany-Snyder v. Weiner*, 539 F.3d 327, 332-333 (6th Cir.2008);

*Kistner v. Law Offices of Michael P. Margelefsky LLC*, 518 F.3d 433, 438-39 (6th Cir.2008).  A

representation is deceptive or misleading if it is subject to an inaccurate yet reasonable interpretation

by the least sophisticated consumer. *Russell v.  Equifax A.R.S.*, 74 F.3d 30, 36 (2d Cir. 1996).  Debt

collectors may not make false claims, period. *Randolph v. IMBS, Inc*., 368 F.3d 726, 730 (7th Cir. 2004).

In this case, M&M sought to collect an $85.00 debt from Mr. Shields.  These collection efforts began back in 2002 and continued up until the beginning of this case.  The only violations at issue in this case, however, are those that occurred within the year prior to filing of the complaint. For purposes of this motion, the only violations at issue are those that arose when Mr. Shields notified M&M that he did not owe this debt, and M&M continued its collection efforts unabated by Mr. Shields's notice of dispute.[12]  There is no genuine issue of material fact that Mr. Shields does not owe any money to St. John's hospital.  These also no genuine issue of material fact that in each of M&M's communications with Mr. Shields (through its collectors Baker, Sage and Pody) M&M claimed that Mr. Shields owed $85.00 on the account.  Additionally, the statements contained in M&M's February 4, 2008 letter to Plaintiff captioned as "NOTICE OF AMOUNT DUE " and its March 10, 2008 letter are likewise false.

Reporting the account as "delinquent" was also false and M&M knew or should have known that Mr. Shields was not late in making a payment.  Even if he did owe the debt, which he did not, Mr. Shields could not be late in paying if he never received a bill. M&M admitted that it has no record that Mr. Shields was ever sent a bill from the creditor or from CRNA, for that matter (Church p. 194, Exhibit C)  and St. Johns testified that it never billed him (Richardson p. 19, Exhibit D).  Mr. Shields demanded that it remove the false information from his credit report but it did not.  M&M reported false information and Mr. Shields is entitled to summary judgment under Section 1692(f).

_____

[12]  Ironically, in the face of Mr. Shields' dispute, it took the position in the collection calls and in the corporate deposition that it had no obligation to verify the information that it was collecting from him.  Rather it was his duty to call "St. Johns."  Had M&M in fact contacted St. Johns it would have learned that he did no owe the account.

By making these claims, M&M sought to collect amounts not owed and misrepresented the amounts owed. More importantly, by virtue of the notice given to M&M by Mr. Shields, it continued to communicate false information to Mr. Shields which it had reason to know was false. There is no genuine issue of material fact as to the falsity of these statements or the fact that Mr. Shields does not owe the money. These actions by M&M violate 15 U.S.C. § 1692e, 1692e(2), 1692e(5), 1692e(8), 1692e(10), and 1692f(1). Accordingly, Mr. Shields requests that the Court grant partial summary judgement in his favor.

**3.** **There is no genuine issue of material fact that M&M's agents Saylor and Pody misrepresented material facts concerning its right to continue reporting false credit information that was soon to be obsolete.**

In the course of collecting the account, M&M collectors Sage and Pody made the following false statements in response to Mr. Shields request that M&M remove the item from his credit report:

Sage: "The only way to get this off your credit is to pay your bill."

Pody:    "Well there's no way to get it off, sir."

Pody went on to assert that M&M would mark the account as disputed but:

"it still is not going to come off your credit report."

Ms. Pody later told Mr. Shields that if he paid it, M&M would mark it as paid with a zero balance - - but that it would remain on his report.

The FDCPA prohibits debt collector's misstatement of a consumer's rights in connection with the collection of a debt. 15 U.S.C. §§ 1692e(2) and 1692e(10). Likewise, a collector may not threaten to report false information. 15 U.S.C. § 1692e(5) and 1692e(8). Under the FCRA, a credit reporting agency is prohibited from reporting collection accounts after the expiration of a seven year period from the date an account is placed for collection. 15 U.S.C. § 1681c(4). Accordingly, a

collection account will "age off" a credit report after the expiration of seven years.[13]  Additionally, a credit reporting agency must delete an item from a credit report where its own independent investigation reveals the information to be inaccurate or incomplete, notwithstanding that a furnisher (like M&M) continues to verify information to a credit reporting agency as correct. 15 U.S.C. § 1681i(a).  Accordingly, there are at least two means by which credit information may come off a credit report.  Consequently, there is no genuine issue of material fact that Pody and Baker's statements concerning the means by which M&M's credit information could be removed was false.  More importantly, it is likewise clear that M&M's credit reporting practices were being used by M&M as the means by which it would collect from Mr. Shields.

Credit reporting is a tool used by debt collectors (including M&M as admitted by Mr. Church) in collecting accounts and would naturally raise concerns on the part of the consumer about harmful effects to his or her reputation and credit standing.  See FTC Staff Opinion Letter, 1997 WL 33791232 (F.T.C.) (Dec. 23, 1997).  *Purnell v. Arrow Financial Service, LLC*, 303 Fed.Appx. 297, 304 n. 5. (6th Cir. 2008);  *Sullivan v. Equifax, Inc.*, 2002 WL 799856, * 4 (E.D.Pa.,2002); *Matter of Sommersdorf*, 139 B.R. 700, 701 (Bankr.S.D.Ohio 1991)). See *Ditty v. CheckRite, Ltd., Inc.*, 973 F.Supp. 1320, 1331 (D.Utah 1997)..*Rivera v. Bank One*, 145 F.R.D. 614, 623 (D.P.R.1993).

The misrepresentation in this case is particularly significant since Mr. Shields expressly told M&M that he was concerned about the adverse effect on  his credit standing and that he wanted it off his report.  M&M and Ms. Saylor held out payment of the account as the *"only"* way the account was going to come off his credit report  - - clearly using the credit reporting system as a means to coerce payment on the account.  Ms. Pody's statement that it would never come off, coupled with

---

[13]M&M has acknowledged that the account would "age off" Mr. Shields report sometime in 2008 (Church p. 203, Exhibit C).

her statement that it would zero out the account if he paid, convey that M&M holds the only key to removing at least part of the adverse information on his report.  Defendants' statements regarding credit reporting are false and  misrepresent Mr. Shields' rights under the FCRA Those misrepresentations are material under Section 692e (10) of the FDCPA.

M&M has acknowledged that the above statements were made and has taken the position that the statements are lawful.  M&M was provided a copy of the audio recording in advance of the deposition of its corporate representative and acknowledged listening to the statements.  Mr. Church testified that Collector Sage answered the question appropriately  (Exhibit C, p. 206).

There is no genuine issue of material fact that the statements made to Mr. Shields were false and that these statements would mislead the least sophisticated consumer as to a material fact. Accordingly, Mr. Shields requests that the Court enter partial summary judgment on M&M's, Baker's and Pody's  violations of 15 U.S.C. §§ 1692e generally, 1692e(2), 1692e(5), 1692e(8), and 1692e(10).

<u>**Availability of Affirmative Defenses**</u>

At the same time, M&M firmly maintains  that Mr. Shields owes the debt and that collection thereof remains lawful, and entirely intentional.  The *bona fide* error defense is inapplicable to intentional conduct 15 U.S.C. § 1692k(c), and even if M&M  were to advance a *bona fide* error defense at this stage, there is no possibility it can make out that defense in this case.

1.    <u>**The bona fide error defense is not available for claims relating to M&M's actions in collecting amounts not owed, because a debt collector may not *blindly rely* on a creditor's assignment in the fact of a bona fide dispute from the consumer.**</u>

A debt collector who reasonably relies  on the creditor's statements as to the amount owing on a debt will not be liable under Section 1692e(2).   However, the *bona fide* error defense will not shield a collector from unreasonable reliance on the creditor:

> Pursuant to § 1692k(c)'s bona fide error defense, a debt collector is not liable for its violations of the FDCPA if "the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). Logically, if a debt collector reasonably relies on the debt reported by the creditor, the debt collector will not be liable for any errors. On the other hand, the bona fide error defense will not shield a debt collector whose own reliance on the creditor's representation is unreasonable or who represents to the consumer a debt amount that is different from the creditor's report.

*Clark v. Capital Credit & Collection Services, Inc*., 460 F.3d 1162, 1176-1177 (9th Cir.2006).

In order to make out the defense, the Defendants need to show reasonable reliance on the creditor's representations. However, Defendants never relied on any statement by St. Johns – and has never asserted that it did. Rather, the only thing that Defendants relied on in claiming that Mr. Shields owed the debt in these calls was its own collection record created in house from information supplied by its "client" CRNA (Church, p. 147-148; p. 185 L. 22-25). Yet Mr. Church could not even identity the true legal name of this entity, individual contact person, address, and telephone number of CRNA – let alone CRNA's relationship to St. Johns.

Moreover, even if it could at one time rely on information from CRNA (which Plaintiff does not concede) in the face of Mr. Shields' specific dispute that his insurance company had paid, it could no longer rely on information supplied by this phantom entity. In the call with Ms. Sage at the beginning of January, Mr. Shields told M&M that he believed that St. Johns Hospital had paid the entire account. Nonetheless, Defendants Sage and Pody, continued to assert that he owed the money and demanded that he pay the bill (Shields ¶ 19 & 25). Had they checked with St. Johns, they would have learned that Mr. Shields' claim was completely valid and that the account had been fully paid.

Moreover, M&M can not claim that its collector acted outside of their authority. In its February 2008 collection letter, it claimed he owed the debt and demanded payment. It consulted with no one prior to making the false statements in that letter. It claims to have contacted CRNA

prior to sending the March collection letter (yet has no evidence of the email sent or received) but reliance on contact with an organization that M&M has yet to even demonstrate exists, can not be deemed to be reasonable.

**2.    M&M may not assert the bona fide error defense in relation to any misrepresentations made by its collectors where M&M insists that its collectors acted in accordance with procedures and made no error.**

To the extent that M&M hopes to maintain a *bona fide error* defense to the claims predicated upon its agent's misstatements, this defense must fail.  As set forth above, the defense is only available where an error causes the violation notwithstanding adequate procedures to comply with the provision of the act.  In this case, the defense does not arise, because M&M claims that neither it nor its' agents made any error at all.  Instead, M&M claims to this day that it is not collecting the account in error and accordingly it can not establish a *bona fide* error defense.  And rather than in violation of any policy or procedure, they appear to have been made with the full backing of M&M (Church, p. 190 & 206, Exhibit C).  Furthermore, even if it does make such a claim, as a matter of law it can not establish the defense because it  did rely on any statement by the creditor and any reliance on statements from the phantom entity CRNA can not be deemed to be reasonable.

Consequently, there is no genuine issue of material fact that M&M may not assert the *bona fide* error defense in response to any of the violations at issue in this motion and there is no impediment to entry of partial summary judgment in favor of Mr. Shields.

**CONCLUSION**

In the process of collecting this account, Defendants falsely stated that Mr. Shields  owed money on the account,  reported false information to the credit report and misrepresented his rights under the Fair Credit Reporting Act, all in violation of the FDCPA.  M&M continues to hold Mr. Shields responsible for the account despite the proven fact that he does not owe the debt.   Mr.

Shields is entitled to a Declaratory Judgement that he does not owe the account and summary

judgment that Defendants violations 15 U.S. C. § 1692e, e(2), e(8), e(10) and f(1).

Plaintiff requests an award of statutory damages in the amount of $1,000 and  costs and

attorney's fees in a separate fee petition pursuant to 15 U.S.C. § 1692k(a)(3) and any other relief to

which he is entitled.

Respectfully Submitted,

LYNGKLIP & ASSOCIATES
CONSUMER LAW CENTER, PLC

By:  s/ Ian B. Lyngklip (P47173)
LYNGKLIP & ASSOCIATES
CONSUMER LAW CENTER, PLC
Attorney For Gerald Shields
24500 Northwestern Highway, Ste. 206
Southfield, MI 48075
(248) 208-8864
JuliePetrik@Att.Net

Dated: February 18, 2010

<u>**Certificate of Service**</u>

       I hereby certify that on February 18, 2010, I served this document on the following

parties:

| Party | Manner Served |
| --- | --- |
| Charity Olson<br>Law Offices of Charity A. Olson<br>22142 West Nine Mile<br>Southfield, MI  48033 | Electronically via the CM/ECF System |

                                           Respectfully Submitted,

                                           By:  <u>s/ Ian B. Lyngklip (P47173)</u>
                                         Julie A. Petrik (P47131)
                                         LYNGKLIP & ASSOCIATES
                                         CONSUMER LAW CENTER, PLC
                                         Attorney For Gerald Shields
                                         24500 Northwestern Highway, Ste. 206
                                         Southfield, MI 48075
                                         (248) 208-8864
                                         JuliePetrik@Att.Net

Dated: February 18, 2010