UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GERALD SHIELDS,

          Plaintiff,

vs.

MERCHANTS & MEDICAL CREDIT
CORPORATION, INC., et al.,

          Defendants.

_____/

Civil Action No.
08-CV-14999

PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

## I. INTRODUCTION

This is a Fair Debt Collection Practices Act ("FDCPA") case with pendant state law claims.

Plaintiff Gerald Shields is suing Merchants & Medical Credit Corp., Inc. ("MMCC"), a debt

collection agency, and three of its employees, April Baker,[1] Stephanie Sage,[2] and Carol Pody[3]

(collectively, "Defendants").[4]  Shields claims that Defendants violated the FDCPA, the Michigan

Occupational Code, and the Michigan Debt Collection Practices Act when they tried to collect an

$85 debt allegedly incurred by Shields for a medical procedure performed in October 2001 at St.

_____

[1] April Baker is also known by the last name Broziak.

[2] Stephanie Sage is also known by the last name Saylor.

[3] Carol Pody is also known by the last name Robbins.

[4] The Amended Complaint, which was filed on January 9, 2009, contains claims against
three additional parties: Collection Company of America, Annette Doe, and Trans Union, LLC.
However, all claims against these parties have been dismissed with prejudice pursuant to a
stipulated order of dismissal entered by the Court on September 8, 2009.  *See* docket entry 22.

John's Oakland Hospital ("SJOH").

On February 19, 2010, Shields filed his Motion for Partial Summary Judgment. *See* docket entry 55. Shields argues that there is no genuine issue of material fact that (1) he does not owe the $85 debt in question, (2) MMCC falsely reported the debt as "delinquent" to credit reporting agencies in violation of the FDCPA, and (3) the individual defendants, during telephone conversations initiated by Shields, misrepresented Shields' rights in violation of the FDCPA. Shields seeks summary judgment as to these alleged FDCPA violations only along with a declaration that he does not owe the $85 debt in question.

Shields' Motion for Partial Summary Judgment is fully briefed and the Court heard oral argument on June 2, 2010. For the reasons that follow, the motion will be granted in part and denied in part.

## II. BACKGROUND[5]

### A.

On September 25, 2000, MMCC and SJOH entered into an agreement whereby "MMCC will collect [SJOH's] delinquent accounts." *See* Def. Ex. A, p. 1. Importantly, the agreement states, in the introductory paragraph: "This Agreement is between Merchants & Medical Credit Corporation, Inc. (MMCC) and St. John Oakwood Hospital." *Id.*

In addition, the agreement contains the following two provisions regarding the obligations of MMCC and SJOH:

> 7.     MMCC hereby agrees to indemnify [SJOH] and to hold [SJOH] harmless from and against all damages, costs, losses and expenses . . . directly resulting from MMCC collection activity under this

---

[5] The background is gleaned from the evidence attached to the parties' papers.

2

contract; provided, however, [SJOH] hereby warrants and guarantees that the information furnished to MMCC, including but not limited to the identity of the debtor, any information about the debtor, the balance of the account and the payments and credits due, shall be accurate. . . .

8.  [SJOH] agrees to indemnify MMCC . . . and to hold MMCC harmless from and against all damages, costs, losses and expenses, including reasonable attorney's fees resulting from errors or omissions in connection with such information furnished by [SJOH] to MMCC. [SJOH] further agrees to indemnify MMCC . . . and to hold MMCC harmless from and against all damages, costs, losses and expenses, including reasonable attorney's fees that may arise out of the acts of the agents or employees of [SJOH].

*Id.* at p. 2.

## B.

In late October 2001, Shields underwent a medical procedure at SJOH. Shields Dep. at 44. Shields incurred various charges for his treatment and care. *See generally* Def. Ex. C.[6]

## C.

Michael Richardson works as the Coordinator in the Patient Financial Service Department of St. John Health Systems.[7] Richardson Dep. at 9-10. He is familiar with SJOH's patient billing system and procedures. *Id.* at 10-11. In particular, Richardson is familiar with "the initial billing activity to the insurance carrier, any subsequent payment coming in, and any patient balance that might be required, brought to balance, bill[ed] to patient." *Id.* at 11-12.

---

[6] Exhibit C contains numerous SJOH billing statements pertaining to hospital charges incurred by Shields in October 2001. The Court notes that every statement but the first one lists a balance of zero on Shields' account.

[7] Richardson testified that SJOH is "part of" St. John Health Systems, although he does not know if they are separate legal entities. Richardson Dep. at 10. In any case, St. John Health Systems bills on behalf of SJOH. *Id.*

Richardson testified that SJOH generally refers unpaid patient bills to debt collectors, including, at one time, MMCC. *Id*. at 12. However, after examining a complete accounting of Shields' 2001 billing records, Richardson testified that Shields owes nothing to SJOH and that SJOH never directed any debt collector to collect a debt from Shields:

> Q:  Is there any question in your mind that there was no balance due or owing to the hospital following resolution of [Shields'] bill with the third-party payor?
>
> A:  That's a correct statement.
>
> Q:  Okay. Was Mr. Shields ever billed anything in relation to these services by the system?
>
> A:  Yes.
>
> Q:  What was he billed?
>
> A:  He was billed for a remaining amount, after the insurance processed the claim initially, and then they then indicated to us that they had processed the claim incorrectly, and reprocessed it for full payment.
>
> Q:  Okay.
>
> A:  Leaving no balance for [Shields].
>
> Q:  So there was nothing ever billed to [Shields] in relation to these services effectively at the end of the day?
>
> A:  Correct.
>
> Q:  Didn't owe any money for the services to the hospital?
>
> A:  Correct.
>
> Q:  Am I correct in assuming that there was nothing assigned to any debt collector by the hospital to collect from Mr. Shields?
>
> A:  Correct.
>
> Q:  At anytime?

A:    Correct.

Q:    Would these records reflect if it was assigned to a debt collector?

A:    Yes.

*Id*. at 18-20.

Summarizing, Richardson's testimony reveals the following pertinent facts. First, there was initially some confusion as to who owed what to SJOH with regard to Shields' October 2001 medical bill. Second, after the confusion was resolved, Shields owed nothing to SJOH "at the end of the day." Third, SJOH never directed a debt collector to collect any debt from Shields. The latter two facts—that Shields owed nothing to SJOH and that SJOH never directed a debt collector to collect any debt from Shields—are especially important given that the agreement pursuant to which MMCC attempted to collect the debt at issue in this case is, by its express terms, between MMCC and SJOH only. If Shields owed nothing to SJOH, and if SJOH never referred to MMCC a debt owed by Shields, then why—and pursuant to whose direction—was MMCC attempting to collect this non-existent debt from Shields in the first place?[8]

## D.

Exhibit E to Shields' motion contains a billing statement from an entity called "St. John Oakland Hosp/CRNA." The statement reflects that Shields owes this entity a balance of $85, the amount of the debt at issue in this case, for anesthesia services rendered in October 2001. The bill further reflects that on June 19, 2002, the $85 balance was charged off and referred to a collection agency. The parties agree that it is this $85 that was the subject of MMCC's collections efforts,

---

[8] The deposition testimony of Gregory Church, MMCC's corporate deponent, confirms that Shields does not owe any money to SJOH. *See* Church Dep. at 186 (testifying that MMCC's "records don't indicate that [Shields] owes [SJOH] money").

which are, in turn, the basis for this lawsuit. Again, the bill contained in Exhibit E reflects that the

$85 was owed to St. John Oakland Hosp/CRNA, not to SJOH.

The question is: who is St. John Oakland Hosp/CRNA and what is its connection to SJOH? The answer to this question is not clear on this record. Richardson's testimony seems to suggest that SJOH and St. John Oakland Hosp/CRNA are unrelated:

> Q:     Is [the St. John Oakland Hosp/CRNA billing statement] a document that is created by St. John Health . . . System or [SJOH] in the course of its billing or accounting for services?
>
> A:     No.
>
> Q:     Okay. Do you recognize the name on top of it?
>
> A:     Yes.
>
> Q:     And what is that?
>
> A:     St. John Oakland Hospital/CRNA.
>
> Q:     And what is St. John Oakland Hospital/CRNA?
>
> A:     It's the professional fee for the Certified Registered Nurse Anesthetist charge.
>
> Q:     . . . . [I]s this a billing that was generated by [St. John Health System] or [SJOH]?
>
> A:     No.
>
> Q:     Is it an accounting that was generated by [SJOH]?
>
> A:     No.
>
> Q:     How do you know that?
>
> A:     It's not our bill. It's simply not our bill. The heading of it is not us.

* * * *

Q:    Do you know who the CRNA is in this?

A:    I don't know.

Q:    Do you recognize whose billing this might be?

A:    I recognize the name.  I know that it's not us.

Q:    And when you say you recognize the name, what do you know about the name?

A:    I know that it's an anesthesiologist professional fee.

* * * *

Q:    So there's no records in [St. John Health Systems] or [SJOH] that would reflect the [$85 charge]?

A:    Correct.

Richardson Dep. at 21-22, 25.  Richardson also testified that "St. John Oakland Hospital/CRNA" refers to an entity and not to a service, *id*. at 23, and that the $85 charge is a "professional fee," *id*. at 25, for a service provided by some entity other than SJOH.  *Id*. at 44.  If a patient called SJOH inquiring about such a fee, Richardson testified that he would advise the patient to "call the billing number on the statement."  *Id*. at 25.

Church, MMCC's corporate deponent, testified at one point that he is "not exactly sure" whether SJOH and St. John Oakland Hospital/CRNA are separate legal entities.  Church Dep. at 143-144.  However, later in his deposition, he stated that it is his position, and also that of MMCC, that SJOH and St. John Oakland Hospital/CRNA are the same entity.  *Id*. at 194.

Exhibit B to Shields' reply brief contains checks from MMCC to SJOH.  Exhibit C to Shields' reply brief contains checks from MMCC to St. John Oakland Hosp/CRNA.  According to Shields, these checks suggest that SJOH and St. John Oakland Hospital/CRNA are separate entities:

The attached checks from MMCC demonstrate that when it wants to pay [SJOH], it does so one way and makes those checks payable in care of Mr. Richardson, and when it wants to pay [St. John Oakland Hospital/CRNA] it does son [sic] in a different way.

Reply at 5 n.5.

Exhibit 8 to MMCC's response brief contains a form titled "Health Insurance Claim Form" and the results of an employer identification number (EIN) search. MMCC argues, based on these documents, that SJOH and St. John Oakland Hosp/CRNA are one in the same.

Only one thing is clear from all this evidence: neither party has carried its burden of proving if or how SJOH is related to St. John Oakland Hospital/CRNA. Indeed, based on the evidence before the Court, it appears that they are not related.

### E.

According to MMCC, it sent Shields a written validation notice pursuant to 15 U.S.C. § 1692g on July 2, 2002.[9, 10] Def. Ex. F, p. 1, line 5; Church Dep. at 213, 216. However, the

---

[9] MMCC utilizes a third party, Focus 1, to mail such notices.

[10] Section 1692g requires a debt collector to provide written notice to the consumer of certain rights guaranteed under the FDCPA. Section 1692g reads, in relevant part:

> (a) Notice of debt; contents
>
> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing--
>
> > (1) the amount of the debt;
> >
> > (2) the name of the creditor to whom the debt is owed;
> >
> > (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the

validation notice is not in evidence. The record is not entirely clear as to whether Shields received the notice, although Shields never contacted MMCC in 2002.

MMCC sent four additional letters to Shields dated September 4, 2002, October 27, 2002, February 4, 2008, and March 10, 2008. Church Dep. at 213. Only the latter two letters are in evidence. *See* Shields Ex. J. According to Church, none of these letters were returned to MMCC. *Id*. at 214. Shields did not respond to the letters sent in 2002.

## F.

According to Shields, he discovered in 2007 that MMCC was reporting a delinquent collection account in the amount of $85 to the creditor reporting agencies. Shields Aff. ¶ 2. Shields' testimony is inconsistent with MMCC's internal notes, which indicate that Shields contacted MMCC on January 5, 2006, at which time he disputed the debt and accused MMCC making up the account "just to get his money." *See* Def. Ex. F, p. 2., lines 12-14. MMCC's internal notes also indicate that Shields' account was marked "disputed" on January 5, 2006. *Id*. at line 10.

## G.

On December 27, 2007, Shields called MMCC and spoke to Defendant April Baker. Def.

---

debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

Ex. F, page 2, lines 16-27; Shields Aff. ¶ 3-10.  Shields testified as follows with regard to this telephone call:

> 4.     In the call, I spoke to a [MMCC] debt collector who identified herself as April Baker.
>
> 5.     I requested that Ms. Baker provide information about the account.
>
> 6.     In the call, I disputed the account and told Ms. Baker that I thought that I had paid the account.
>
> 7.     Ms. Baker told me that I owed $85 on the account and demanded that I pay it.
>
> 8.     I asked for written documentation showing that I owed money on the account.
>
> 9.     Ms. Baker told me that she would not send any information stating it was too expensive.
>
> 10.     [MMCC] did not send me any documentation on the account.

Shields Aff. ¶¶ 4-10.  Shields' testimony is not inconsistent with MMCC's internal file notes, which indicate that Shields advised Baker during the December 27, 2007, phone call that he had not received any letters from MMCC and that he thought the $85 balance had been paid.  Def. Ex. F, page 2, line 16-27.  The notes also reflect that Shields was "upset because [Baker] told him at 1st its [sic] costing [MMCC] money to send him [notices] over and over."  *Id*. at lines 25-27.

Shields called MMCC again on January 4, 2008.  Shields tape recorded this call, but the recording is not in evidence.  Shields Dep. at 123; Shields Aff. ¶ 28.  This time, Shields spoke with Defendant Stephanie Sage.  Shields Aff. ¶ 11.  Shields testified as follows with regard to this telephone call:

> 12.     I asked Ms. Sage who the creditor was and what the amount was for.
>
> 13.     Ms. Sage told me the debt was to St. Johns Hospital.

14. I told Ms. Sage that I believed that my insurance company paid the bill.

15. I told Ms. Sage that I did not believe I owed the account.

16. Further, I expressed my concern to Ms. Sage that [MMCC] was posting harmful information on my credit report and demanded that it remove the account.

17. Ms. Sage said the "Only way to get this off your credit is to pay your bill."

18. Ms. Sage told me that if I wanted information about the account I should call the hospital.

19. After I disputed the account, Ms. Sage demanded that I pay the account.

Shields Aff. ¶¶ 12-19.  Shields' testimony is not inconsistent with MMCC's internal file notes, which indicate that Shields requested "something in writing in regards to this account," at which time Sage advised Shields that MMCC had previously sent him various letters.   Def. Ex. F, page 2, lines 35-36.  At oral argument, Shields' counsel conceded that Shields never called SJOH to find out the basis for the debt claim.

Shields called MMCC again on January 24, 2008.  Shields tape recorded this call, but the recording is not in evidence.  Shields Aff. ¶ 28.  This time, Shields spoke with Defendant Carol Pody.  Shields Aff. ¶ 20.  Shields testified as follows with regard to this telephone call:

21. I told Ms. Pody that I didn't think that I owed the bill.

22. I asked Ms. Pody what I needed to do to get the account off my credit report.

23. In response Ms. Pody told me "Well there's no way to get it off, sir." She further stated "it still is not going to come off your credit report."

24. She further told me that if I paid it, [MMCC] would mark it as paid with a zero balance – but that it would remain on my report.

25.     Ms. Pody demanded that I pay the account.

26.     I further told Ms. Pody that I thought the bill had been paid, either by myself or by my insurance company.

27.     Ms. Pody told Mr. Shields that [MMCC] would continue to report the account as a collection account.

Shields Aff. ¶¶ 21-27. MMCC's internal notes reflect that Shields "kept demanding" that the debt be removed from his credit report, but was told in response that it would not be removed because it is a "valid debt." *Id*. at lines 45-49.

On January 24, 2008, Shields sent a letter to MMCC demanding that it stop posting "inaccurate information" on his credit report. *See* Def. Ex. G.

Shields filed the present lawsuit on December 4, 2008. He filed an Amended Complaint on January 19, 2009. The present Motion for Partial Summary Judgment was filed on February 18, 2010.

## III. SUMMARY JUDGMENT STANDARD

Pursuant to Fed. R. Civ. P. 56(b), a party against whom a claim is asserted may "at any time, move with or without supporting affidavits, for a summary judgment in the party's favor as to all or any part thereof." Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of

material fact." *Id*. at 323.

A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting Black's Law Dictionary 881 (6th ed. 1979)) (citations omitted). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986). Conversely, where a reasonable jury could not find for the nonmoving party, there is no genuine issue of material fact for trial. *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993). In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party. *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-1211 (6th Cir. 1984).

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322-323. The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). The rule requires the non-moving party to introduce evidence of evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997).

## IV. ANALYSIS

In the present Motion for Partial Summary Judgment, Shields asks the Court to declare, as

a matter of law, "that he does not owe the underlying account." Shields Br. at 3. Phrased

differently, Shields urges the Court to declare that "he need not pay [the $85] debt to [MMCC]."

*Id*. at 13. Shields also asks the Court to conclude, as a matter of law, that certain statements made

by Sage and Pody violated the FDCPA.[11]

## A. Shields' Request for Declaratory Relief

As stated by the Sixth Circuit,

> [t]he Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201 (emphasis added). The Supreme Court has indicated that this act "confer[s] on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." In passing the act, Congress "created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants." District courts must be afforded substantial discretion to exercise jurisdiction "in the first instance, because facts bearing on the usefulness of the declaratory judgment remedy, and fitness of the case for resolution, are peculiarly within their grasp."

> In considering whether a district court properly exercised this discretion, we have focused on the five factors first articulated in *Grand Trunk W. R.R. Co. v. Consol. Rail Co.*:

> > (1) whether the declaratory action would settle the controversy;

> > (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;

> > (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for res judicata;"

> > (4) whether the use of a declaratory action would increase friction

---

[11] The remaining claims asserted in Shields' Amended Complaint are not at issue in the present motion.

between our federal and state courts and improperly encroach upon
state jurisdiction; and

(5) whether there is an alternative remedy which is better or more
effective.

746 F.2d 323, 326 (6th Cir. 1984) (formatting altered).

*Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008) (emphasis in original) (case
citations omitted).

The Court cannot, at this time, declare that Shields does not owe the $85 debt to MMCC
because, for the reasons stated in Section II(D) above, both parties have failed to provide reliable
evidence resolving the material question of how SJOH and St. John Oakland Hosp/CRNA are
related, if they are related at all. The record is undisputed that Shields owes nothing to SJOH, as the
testimony of both Richardson and Church confirm. *See* Richardson Dep. at 19-20 (testifying that
Shields did not owe any money to SJOH); Church Dep. at 186 (testifying that MMCC's "records
don't indicate that [Shields] owes [SJOH] money"). However, Shields appears to owe money to St.
John Oakland Hosp/CRNA pursuant to the billing statement attached as Exhibit E to Shields'
motion, which reflects that Shields owes $85 to St. John Oakland Hosp/CRNA and that the $85
balance was referred to a collection agency.

If SJOH and St. John Oakland Hosp/CRNA are one in the same, as Shields argues, then the
fact that Richardson and Church have testified that Shields owes nothing to SJOH might suggest that
Shields also owes nothing to St. John Oakland Hosp/CRNA, notwithstanding the bill contained in
Shields' Exhibit E. However, if SJOH and St. John Oakland Hosp/CRNA are separate entities, as
MMCC argues, the fact that Richardson and Church have testified that Shields owes nothing to
SJOH is immaterial inasmuch as such testimony does not preclude a finding that Shields owes $85

15

to St. John Oakland Hosp/CRNA.

On the confused state of the present record, the Court cannot determine, as a matter of law, whether Shields owes the debt at issue. At this juncture, the Court declines to exercise its discretion under the Declaratory Judgment Act.

## B. Did MMCC Violate the FDCPA?

The Sixth Circuit has explained the concerns and standards applicable to FDCPA claims as follows:

> Congress enacted the FDCPA to eliminate "abusive, deceptive, and unfair debt collection practices." 15 U.S.C. § 1692(a). "When interpreting the FDCPA, we begin with the language of the statute itself." As this court has noted, the FDCPA is "extraordinarily broad," crafted in response to what Congress perceived to be a widespread problem. Courts use the "least sophisticated consumer" standard, an objective test, when assessing whether particular conduct violates the FDCPA. This standard ensures "that the FDCPA protects all consumers, the gullible as well as the shrewd." Nonetheless, the standard "also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care."

*Barany-Snyder v. Weiner*, 539 F.3d 327, 332-333 (6th Cir. 2008) (case citations omitted). "The FDCPA was intended to protect the least sophisticated consumers from statements with a capacity to deceive." R. Hobbs, National Consumer Law Center, Fair Debt Collection § 5.5.2.4, p. 197 (6th ed. 2008 and Supp. 2009). "Violations of th[e] [FDCPA] need not be intentional to be actionable" and "[p]roof of detrimental reliance or of actual damages is not required to establish liability for statutory damages." *Id*. at p. 198. "The misrepresentation need not be a factual one, but may be a misrepresentation of consumer's legal rights." *Id*.

Shields argues that MMCC violated certain provisions of 15 U.S.C. §§ 1692f and 1692e as a matter of law. Generally speaking, § 1692f prohibits the use of "unfair or unconscionable means

to collect or attempt to collect any debt." 15 U.S.C. § 1692f. Section 1692e prohibits the use of "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.

Specifically, Shields argues that MMCC violated, as a matter of law, the following provisions: §§ 1692f(1), 1692e(2), (5), (8), and (10).

Section 1692f(1) proscribes "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

Section 1692e(2) proscribes "[t]he false representation of (A) the character, amount, or legal status of any debt; or (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt."

Section 1692e(5) prohibits a debt collector from "threat[ening] to take any action that cannot legally be taken or that is not intended to be taken."

Section 1692e(8) prohibits a debt collector from "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed."

Section 1692e(10) proscribes "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

Shields contends that MMCC violated the above subsections of §§ 1692e and 1692f, as a matter of law, when it claimed that Shields owed the $85 debt and tried to collect it:

> At issue in this case is [MMCC's] efforts to collect a debt which Mr. Shields did not owe. These efforts fall within the ambit of multiple provisions of the FDCPA governing the collection of debts which are not owed, and false representations. Specifically, debt collectors may not collect amounts which

> the consumer has not agreed to pay, 15 U.S.C. § 1692f(1). Likewise, collectors may not employ false representations as to the amount of the debt or its status. 15 U.S.C. § 1692e(2). Nor may they communicate any information which should be known to be false. 15 U.S.C. § 1692e(8). And, any form of false or misleading statement may give rise to liability. 15 U.S.C. § 1692e and 1692e(10).

Shields Br. at 13. However, for the reasons stated above, the Court is unable to determine as a matter of law whether the $85 debt at issue in this case is owed. Thus, Shields is not entitled to summary judgment on this basis.

Shields also claims that the following three statements made by MMCC debt collectors violated the FDCPA as a matter of law:

(1) Sage: "The only way to get this off your credit is to pay your bill."

(2) Pody: "Well there's no way to get it off, sir."

(3) Pody: "It still is not going to come off your credit report" even if the account is marked as disputed or if the balance is paid.

Importantly, MMCC does not dispute that these statements were made. In fact, in its response brief, it never even mentions these statements; instead, it chose to completely ignore Shields' argument that the statements of Sage and Pody, reproduced above, violate the FDCPA.

Again, § 1692e(8) prohibits a debt collector from "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." Section 1692e(10) proscribes "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt."

Sage told Shields that "[t]he *only* way to get this off your credit is to pay your bill," (emphasis added), and Pody told Shields that "there's no way to get it off" his credit report, even

18

if he disputed the account and/or paid the balance. There being no dispute that these statements were actually made by Sage and Pody, the Court finds that they violate the FDCPA, as a matter of law, because the statements are false.

As Shields points out, the FDCPA prohibits a credit reporting agency from reporting a collection account that is over seven years old. *See* 15 U.S.C. § 1681c(4).[12] The FDCPA also requires credit reporting agencies to "conduct a reasonable reinvestigation" of a disputed debt and "promptly delete" any information that is found to be "inaccurate or incomplete." 15 U.S.C. §§ 1681i(a)(1)(A) and 1681i(a)(5). In light of these statutory provisions, Sage's statement to Shields that "[t]he only way to get th[e] [$85 debt] off your credit is to pay your bill" is false; the debt could also come off Shields' credit report pursuant to the age-off provision of § 1681c(4) or under the reinvestigation procedures set forth in § 1681i(a). Pody's statement to Shields that "there's no way to get it off" violates the FDCPA for the same reason. *See* Hobbs, *supra*, at § 5.5.2.4, p. 198 (factual misrepresentations, along with misrepresentations of consumers' legal rights, violate the FDCPA).

MMCC argues that it may rely on what is known as the "bona fide error" defense in the event that Shields establishes a FDCPA violation. This defense is codified at 15 U.S.C. § 1692k(c), which states:

> [a] debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

As the Sixth Circuit has recently clarified:

---

[12] Church even acknowledged during his deposition that the $85 debt would age-off Shields' credit report in October 2008. *See* Church Dep. at 203.

> this defense applies to mistakes of law as well as to clerical errors. "To qualify for the bona fide error defense, a debt collector must prove by a preponderance of the evidence that: (1) the violation was unintentional; (2) the violation was a result of a bona fide error; and (3) the debt collector maintained procedures reasonably adapted to avoid any such error."

*Hartman v. Great Seneca Fin. Corp.*, 569 F.3d 606, 614 (6th Cir. 2009) (citations omitted).

MMCC devotes a substantial portion of its response brief to the third element of the defense – whether it maintained procedures reasonably adapted to avoid an error. *See* Resp. at 10-12. However, as noted above, MMCC has entirely failed to address the statements made by Sage and Pody. Thus, MMCC advances no argument whatsoever with regard to the first two elements of the bona fide error defense – whether the errors made by Sage and Pody were unintentional and whether the errors resulted from a bona fide error. Therefore, MMCC has not carried its burden of demonstrating that the defense applies with regard to the FDCPA violations committed by Sage and Pody.[13]

## V.  CONCLUSION AND ORDER

For the reasons stated, Shields' Motion for Partial Summary Judgment is granted in part and denied in part as follows:

---

[13] It should be noted that much of MMCC's response brief is non-responsive to the arguments actually asserted by Shields in his motion papers. For example, MMCC devotes a substantial portion of its "Law and Argument" section to the issues of whether it (1) complied with the FDCPA's validation requirements under § 1692g and (2) properly relied upon the representation of its client, St. John Oakland Hosp/CRNA, that the $85 debt is owed. *See* Resp. at 8-10. However, Shields does not seek summary judgment with regard to these issues. Rather, he seeks a declaration that the debt is not owed and a finding that Sage and Pody violated the FDCPA. The latter issue was not discussed by MMCC.

- denied as to Shields' request for declaratory relief;

- denied as to Shields' request for a finding that MMCC violated the FDCPA by attempting to collect a debt that he does not owe;

- granted as to Shields' claim that certain statements made by Sage and Pody violated the FDCPA.

SO ORDERED.


S/Paul D. Borman_____
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  June 28, 2010

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on June 28, 2010.


S/Denise Goodine_____
Case Manager