UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GERALD SHIELDS,

                                                    No. 08-14999

                    Plaintiff,                      District Judge Paul D. Borman

v.                                                  Magistrate Judge R. Steven Whalen

MERCHANTS AND MEDICAL CREDIT
CORPORATION, INC., ET AL.,

                    Defendants.
_____ /

## REPORT AND RECOMMENDATION

This case was brought under the Fair Debt Collection Practices Act ("FDCPA"),
15 U.S.C. § 1692, *et. seq.* Before the Court is Plaintiff's motion for attorney fees and
costs under 15 U.S.C. § 1692k(a)(3) [Doc.#67], in which Plaintiff seeks $91,754.00 in
attorney fees and $3,500.17 in costs, for a total of $95,254.17.  The matter has been
referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

For the reasons discussed below, I recommend that the Plaintiff's motion be
GRANTED IN PART, reducing the number of attorney hours claimed by 50%, and
awarding $43,827.00  in attorney fees along with $3,500.17 in costs, for a total of
$47,327.17.

## I.   BACKGROUND FACTS

The Plaintiff's FDCPA claims revolve around an $85.00 debt alleged to have been
incurred for a medical procedure in 2001 at St. John's Oakland Hospital ("SJOH"). The
underlying facts were thoroughly discussed in Judge Borman's June 28, 2010 Opinion
and Order Granting in Part and Denying in Part Plaintiff's Motion for Partial Summary

-1-

Judgment [Doc. #65], and need not be repeated here at any length. In his Opinion and Order, Judge Borman observed that the record was confusing as to the relationship between SJOH, to whom the Plaintiff owed nothing, and an entity known cryptically as "St. John Oakland Hosp/CRNA," to whom, according to Defendant, the Plaintiff owed $85.00. That confusion appears to have never been resolved, and the relationship, if any, between SJOH and St. John Oakland Hosp/CRNA remains a mystery to this day. In any event, owing to this uncertainty, Judge Borman denied summary judgment as to Plaintiff's request that the Court declare as a matter of law that he does not owe the underlying account. *Opinion and Order*, at 13-16. Likewise, Plaintiff's request for a finding that Defendant violated the FDCPA by attempting to collect a debt that he does not owe was denied. *Id.* at 20-21. However, summary judgment was granted to the Plaintiff on his claim that certain statements made by Defendant's agents violated the FDCPA. *Id.* at 16-21. As a result, the Plaintiff became entitled to statutory damages of up to $1,000.00. 15 U.S.C. § 1692(a)(2)(A).

The Plaintiff's remaining claims were left undisturbed by Judge Borman's Opinion and Order.

On July 28, 2010, one month after the decision on partial summary judgment, the parties appeared for a final pretrial conference, at which time the case settled. For $1,000.00. This attorney fee petition followed.

## II.   LEGAL PRINCIPLES

The FDCPA authorizes the court to award attorney's fee and costs to a prevailing party. *See* 15 U.S.C. § 1692k(a) (3); *Lee v. Thomas & Thomas,* 109 F.3d 302, 306-7 (6th Cir.1997). Attorney fees awarded under this section must be reasonable. As the Supreme Court noted in *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40

(1983), "[t]he most useful starting point for determining the amount of a *reasonable* fee is the number of hours *reasonably* expended on the litigation multiplied by a *reasonable* hourly rate." (Emphasis added).  In *Glass v. Secretary of HHS*, 822 F.2d 19, 21 (6th Cir. 1987), the Sixth Circuit, citing *Coulter v. State of Tennessee*, 805 F.2d 146, 149 (6th Cir. 1986), recognized "that the rate-times-hours method of calculation, also known as the 'lodestar' approach, includes most, if not all, of the factors relevant to determining a reasonable attorney's fee."

In *Perdue v. Kenny A.*, __U.S.__, 130 S.Ct. 1662, 176 L.Ed.2d__ (2010), the Supreme Court held that the lodestar amount is presumptively reasonable, and that an upward enhancement from that amount for "superior performance" is impermissible, absent "rare and exceptional" circumstances. *Id.* at 1674. In so holding, *Perdue* referenced the oft-stated principle that "the lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee." *Id.* at 1673, quoting *Pennsylvania v. Delaware Valley Citizen's Council for Clean Air*, 478 U.S. 546, 566 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986) (internal quotation marks omitted). Thus, once the lodestar is established, a court will generally not depart upward or downward based on factors such as the complexity of the case, the experience, reputation or ability of counsel, the amount involved or the results obtained. However, those factors are most certainly relevant in arriving at the lodestar figure in the first instance, particularly in determining whether the hours claimed were *reasonably* expended within the overall context of the litigation. *See Hensley*, 461 U.S. at 434 ("The district court also should exclude from this initial [lodestar] fee calculation hours that were not 'reasonably expended'")[1]; *Aventis*

---

[1] As to specific inquiries that would be included in the initial lodestar calculation, *Hensely* referenced *Johnson v. Georgia Highway Exp., Inc*., 488 F.2d 714, 717 -720 (5th Cir. 1974), which listed the following 12 factors: (1) the time and labor required; (2) the

*Cropscience, N.V. v. Pioneer Hi-Bred International, Inc.*, 2010 WL 2306677, *5, fn. 7 (M.D.N.C. 2010) (pursuant to *Perdue*, court "consider[s] the relevant *Johnson* factors only within the context of determining a reasonable number of hours and reasonable rate for the purposes of the lodestar calculation").

The purpose of fee shifting statutes such as the FDCPA is to ensure that plaintiffs whose damages may be relatively small may nevertheless obtain counsel to vindicate their federal rights. *Perdue* at 1671. Thus, "a 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Id.* at 1673. However, "[t]he primary concern in an attorney fee case is that the fee awarded be reasonable, that is, one that is adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers." *Reed v. Rhodes,* 179 F.3d 453, 471 (6th Cir.1999). *See also Coulter v. State of Tennessee, supra*, 805 F.2d at 149 ("Legislative history speaks of 'fees which are adequate to attract competent counsel, but which do not produce windfalls,'..and cautions against allowing the statute to be used as a 'relief fund for lawyers'")(internal citations to Congressional Record omitted). Or, as the Fifth Circuit put it in *Johnson*, 488 F.2d at 720, "[C]ourts must remember that they do not have a mandate...to make the prevailing counsel rich." The party seeking an award of fees bears the burden of showing that the request is reasonable. *See Wooldridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1176 (6th Cir. 1990). "A request for attorney's fees should not result in a second major litigation." *Hensley*, 461 U.S. at 438.

---

novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Ultimately, the determination of what constitutes a reasonable attorney fee "is a matter that is committed to the sound discretion of a trial judge." *Perdue, supra*, 130 S.Ct. at 1676.

### III.   DISCUSSION

In what both parties have characterized as a relatively uncomplicated FDCPA case that settled for $1,000.00, Plaintiff asks for attorney fees of more than $91,000.00. While one's natural response is astonishment, and while the disparity between the modest settlement and the fee request might bear close scrutiny, strict proportionality between recovery and fees is not required, and a court's exercise of discretion on the issue of attorney fees in an FDCPA case is guided by the fair application of the legal principles discussed above, not by initial visceral reactions.

### A.   Prevailing Party Status

To justify an award of attorney fees, a party must be a "prevailing party." In *Hewitt v. Helms*, 482 U.S. 755, 760, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987), the Supreme Court noted that "[r]espect for ordinary language requires that a plaintiff receive at least some relief on the merits of his claim before he can be said to prevail." In *Texas State Teachers Assn. V. Garland Independent School Dist.*, 489 U.S. 782, 792, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989), the Court refined the definition of "prevailing party" as follows:

> "Thus, at a minimum, to be considered a prevailing party...the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant."

In *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources,* 532 U.S. 598, 604-605, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001), the Court reiterated the "change of legal relationship" test, adding that such change must carry some judicial *imprimatur*, not merely be the result of a defendant's voluntary

conduct.  *Buckhannon* rejected the so-called "catalyst theory," concluding that private settlement agreements do not meet the "change of relationship" test because they "do not entail the judicial approval and oversight involved in consent decrees...." *Id.* at 604, n. 7. *See also Toms v. Taft*, 338 F.3d 519, 529 (6th Cir. 2003) (plaintiffs who settled their case were not prevailing parties because they obtained relief solely based on the defendants' voluntary conduct and did not obtain a judgment compelling a change in the defendants' conduct).

Thus, the settlement of this case on the date of the final pretrial conference does not confer prevailing party status on the Plaintiff. What *does* make him a prevailing party, however, is the grant of partial summary judgment, one month earlier, on his claim for statutory damages.[2]

## B.   Hourly Rate

In determining a reasonable hourly rate, "courts should look to the hourly rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Fuhr v. School Dist. of Hazel Park*, 364 F.3d 753, 762 (6th cir. 2004).  However, the court retains broad discretion to determine what constitutes a reasonable hourly rate.  *Id.; Wells v. New Cherokee Corp.*, 58 F.3d 233, 239 (6th Cir. 1995).

Two lawyers from Lyngklip & Associates Consumer Law Center, PLC worked on

---

[2] Plaintiff states that his fee petition "follows entry of judgement [sic] in favor [of] Mr. Shields for the full $1,000 statutory damage award sought by him under the FDCPA." (Doc. #67, p.1). While the docket contains a minute entry that the case settled on July 28, 2010, no entry of judgment follows. Thus, the negotiated settlement on that date cannot convey prevailing party status. In addition, Judge Borman's June 28, 2010 Opinion and Order granted summary judgment on liability for statutory damages–which is sufficient to make Plaintiff a prevailing party– but did not determine the amount of those damages.

this case. Attorney Ian Lyngklip requests an hourly rate of $375, and attorney Julie Petrik request an hourly rate of $275. Without question, both Mr. Lyngklip and Ms. Petrik are experienced, capable and respected attorneys in the field of consumers' rights.[3] According to the State Bar of Michigan's most recent (2011) Economics of Law Practice Survey, consumer lawyers in the 75th percentile of earnings bill at a rate of $350 per hour, and those at the 95th percentile at $515 per hour. However, the sample is only 33 respondents, which may not be large enough to accurately assess the reasonableness of the requested fees in this case. Therefore, I will take these numbers into account, but will also consider the billing rates of lawyers with reasonably comparable (or greater) levels of skill.

For example, few, if any, areas of specialty require more skill and expertise than criminal practice. The stakes are immeasurably higher than in civil cases, and criminal lawyers deal regularly with complex state and federal statutes, as well as constitutional issues. Unlike most civil practitioners, criminal lawyers frequently try cases.[4] According to the 2010 State Bar Survey, private criminal practitioners in the 75th percentile bill at $250 per hour, and those in the 95th percentile at $325 per hour, based on 233 respondents.

According to the Survey, plaintiffs' employment litigation lawyers (91 respondents), who generally have skill levels comparable to consumer lawyers, have hourly rates of $300 at the 75th percentile, and $400 at the 95th percentile.

---

[3] Mr. Lyngklip did not file an appearance until October 8, 2009 [Doc. #30].

[4] By way of comparison, Mr. Lyngklip has been counsel of record in some 259 cases in this Court, of which only two have gone to trial. *See Purnell v. Arrow Financial Services, L.L.C.*, Docket No. 05-73384, and *Gamby v. Equifax Information Services, L.L.C.*, Docket No. 06-11020.

Under the 2010 Survey, the 75th percentile average of consumer, criminal and employment lawyers (($350 + $250 + 300) / 3) is $300. Placing both Mr. Lyngklip and Ms. Petrik somewhere around the 75th percentile, and adjusting for the fact that much of the work in this case was performed well before the 2010 Survey, I find that $300 is a reasonable hourly rate for both attorneys. Plaintiff, in fact, has alerted the Court to two cases from 2009 and 2008, respectively, that found $300 per hour to be a reasonable rate in FDCPA cases. *See Dowling v. Litton Loan Servicing LP*, 320 Fed.Appx. 442 (6th Cir. 2009); *Kelly v. Montgomery Lynch & Associates, Inc.*, 2008 WL 4560744 (N.D. Ohio 2008).

## C.   Number of Hours Expended

In determining the lodestar amount, the Court must assess the number of hours *reasonably* expended in this litigation. As the Supreme Court stated in *Hensley*, 461 U.S. at 436, "Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill. Again, the most critical factor is the degree of success obtained." Nothing in *Perdue* removes the "degree of success" as an important consideration in determining a reasonable fee or scrutinizing the reasonableness of the hours expended. *See Grievson v. Rochester Psychiatric Center*,__F.supp.2d__, 2010 WL 3894983, *4 (W.D.N.Y. 2010), a post-*Perdue* case reaffirming that "[t]he most critical factor in determining a reasonable fee is the degree of success obtained by the prevailing party." (Internal quotation marks omitted).

It is true that the Plaintiff in this case was completely successful in obtaining statutory damages of $1000 for the FDCPA violation.[5] But, the Plaintiff completely failed to prevail on any other claim for relief in his amended complaint [Doc. #3]. He did not obtain equitable relief in the form of a declaration that the alleged debt was not owed; he did not obtain "actual damages for items including emotional distress, mental anguish, frustration, humiliation, and embarrassment"; and he did not prevail on his claim for treble damages. *See Amended Complaint*, ¶ 171. As Judge Borman's June 28, 2010 order hold, summary judgment was denied on his claim that the Defendant attempted to collect a debt that was not owed.

Counsel rationalizes the number of hours claimed with the argument that he was met with a militant "Stalingrad defense," in which the Defendant, insisting on "the full measure of due process at every turn," unnecessarily and unreasonably prolonged the litigation. To be sure, the Plaintiff had to file a few discovery motions and attend some depositions–not an unusual occurrence in any civil case. And he will be compensated for those tasks. But while the Defendant might not claim the high ground in discovery practice, the Plaintiff greatly overstates his grievances.

The Plaintiff complains that the Defendant unreasonably rebuffed his settlement demands, and "dispatched Plaintiff on a fool's errand to find proof with which to disprove a debt which has no documentary support in the first place." *Plaintiff's Motion* at p. 12. First, it is the Plaintiff's burden to support his claim that the debt did not exist. Further, as noted, the Plaintiff lost his motion for summary judgment on that claim. Under these

---

[5] More specifically, he was successful in winning summary judgment on the issue of *liability* under the FDCPA, by virtue of Judge Borman's June 28, 2010 Opinion and Order.  Although the amount of damages–the statutory maximum of $1,000–was apparently negotiated by the parties as part of the voluntary settlement of this case, Judge Borman's opinion was silent as to FDCPA damages.

circumstances, it is not surprising that the Defendant was not amenable to settlement on this claim–and ultimately, this claim was dismissed as part of the settlement.

Moreover, Plaintiff's counsel is not without sin when it comes to gamesmanship. Under the direction of counsel, the Plaintiff recorded two telephone calls to the Defendant. Those conversations led to the Plaintiff's claim for statutory damages. Yet, for his own strategic reasons, and contrary to the spirit of Rule 26, which contemplates full discovery, counsel elected not to divulge the recordings in their entirety.[6] Defendant describes the Plaintiff's counsel's conduct as follows:

> "[F]ollowing the filing of MMCC's answer and affirmative defenses, Plaintiff's counsel indicated that Plaintiff had tape recordings of the alleged phone calls with MMCC's representatives. Instead of producing the alleged recordings in their entirety, Plaintiff's counsel persisted with their mischievous game of cat and mouse in an obvious effort to obfuscate their own involvement in the creation of these claims. Despite multiple requests for voluntary production, both prior to and after the filing of MMCC;s Answer, Plaintiff's counsel steadfastly refused to provide the recordings, playing short excerpts of the calls in question by speaker phone, only, some six months into the case. In fact, the alleged recordings were not turned over in their entirety until October 2009 and that was only after MMCC's counsel raised the issue of motion practice to compel the recordings." *Defendant's Response* at p. 5.

Hiding the ball in this manner is not conducive to productive settlement discussions, and Defendant cannot be fairly criticized for not blindly jumping on the Plaintiff's initial offers.  Moreover, the amounts that Plaintiff offered–ranging from $3,000 to $56,00– far exceeded the amount for which the case eventually settled (not counting attorney fees, of course). Nor can the Defendant be overly criticized for not

---

[6] The Plaintiff states that the tapes "include the evidence upon which the Court granted summary judgement [sic]." *Plaintiff's Brief*, p. 7. That is incorrect. The Opinion and Order regarding summary judgment clearly indicates that neither of the recordings were in evidence. *Opinion and Order* [Doc. #65] at 10, 11. However, for purposes of the summary judgment motion, the Defendant did not dispute that the relevant statements were made. *Id.* at 18.

agreeing to unilaterally imposed and (according to Defendant) conditional and artfully worded stipulations.

Suffice it to say that the Plaintiff litigated this case aggressively, as is, of course, his right. But as the court observed in *King World Productions, Inc. v. Financial News Network, Inc.,* 674 F.Supp. 438, 440 (S.D.N.Y.1987), "[w]hile parties to a litigation may fashion it according to their purse and indulge themselves and their attorneys ... they may not foist these extravagances upon their unsuccessful adversaries." (*quoting Farmer v. Arabian American Oil Company,* 31 F.R.D. 191, 193 (S.D.N.Y.1963)).

In determining whether the time counsel expended in this case was reasonable, it would be instructive to compare it to another consumer case brought in this Court, *Leyva v. Coachman*, E.D. Mich. No. 04-40171. In *Leyva*, brought under the Magnuson-Moss Warranty Act, 15 U.S.C. §2301, *et. seq*., the plaintiff was represented by one of the most experienced consumer protection attorneys in the State. Unlike this case, *Leyva* went to trial, and the jury found in the Plaintiff's favor. Following trial, there were numerous post-judgment motions. I described the proceedings thusly:

> "[T]his was a heavily litigated case at all stages, pre-trial, trial, and post-judgment, as evidenced by the docket entries. Apart from the factual issues presented to the jury, the parties litigated numerous complex and substantial legal issues, including the questions of Defendant Michal's disclaimer of implied warranty under Magnuson-Moss and the requirement of privity in an implied warranty claim. Pretrial preparation was intensive, and the trial itself was hard-fought."

If the present case is Stalingrad, *Leyva* was World Wars I, II and III combined. Against this background, the plaintiff in *Leyva* claimed 269.1 hours of attorney time from the filing of the Complaint through judgment, and an additional 31.9 hours in post-judgment litigation. Attorney fees in *Leyva* were awarded in the amount of $68,524.25, at the rate of $250 per hour for lead counsel. Had counsel in *Leyva* been compensated at

-11-

$300 per hour, the award would have been $80,730 for attorney time through judgment, and $90,300 through post-judgment motions.[7]

In contrast, Plaintiff in this case claims 292.18 hours for a case that settled for $1,000, and in which he failed to prevail in any of his claims except the statutory damages claim. He asks for $91,754.00 in attorney fees.[8]  That request is unreasonable, and must be reduced.

Where, as here, there is a voluminous fee application or time sheet, in exercising its discretion to reduce the request, the court "is not required to set forth an hour-by-hour analysis of the fee request." *Jacobs v. Mancuso,* 825 F.2d 559, 562 (1st Cir.1987). *See also In re 'Agent Orange' Product Liability Litigation,* 818 F.2d 226, 237-38 (2d Cir.1987) ("no item-by-item accounting of the hours disallowed is necessary or desirable"); *Ohio-Sealy Mattress Mfg. Co. v. Sealy Inc.,* 776 F.2d 646, 657-58 (7th Cir.1985).  Rather, "the district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure as a practical means of trimming the fat from a fee application."  *Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir.1992)(internal quotation marks omitted).  *See also Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (holding that  "the court has discretion simply to deduct a reasonable percentage of the number of hours claimed 'as a practical means of trimming fat from a fee application.'") (internal citations omitted); *Mares v.*

---

[7] The only post-settlement motion in this case relates to the Plaintiff's fee petition, and amounts to slightly over $6,000.

[8] Incredibly, apart from the 292.18 claimed, Plaintiff states that he "has expended every effort to limit fees, and has exercised billing discretion to reduce the requested fees by nearly $20,000, having written off 70.30 hours from the initial bill totaling $114,436 for 362.30 hours." *Plaintiff's Motion*, Doc. #67, at 3. A number of those "no charge" hours were expended as early as November 26, 2007, almost a year before the Complaint was filed. *Id.*, Exh. 2.

-12-

*Credit Bureau of Raton*, 801 F.2d 1197, 1202 -1204 (10th Cir. 1986) (affirming a reduction in claimed fees by 77%, the court states, "There is no requirement, either in this court or elsewhere, that district courts identify and justify each disallowed hour.").

In *Richard v. Oak Tree Group Inc*., 2009 WL 3234159, *3 -4 (W.D.Mich. 2009), the court reduced attorney fees in an FDCPA case by 85%, based on the fact that the plaintiff obtained only partial success, and was awarded damages on a "relatively minor" statutory violation. *See also Blajei v. Sedgwick Claims Management Services, Inc*., 2010 WL 3855239, *12 (E.D.Mich. 2010) (claim for fees discounted 50% based on plaintiff's partial success); *Weaver v. Dow Corning Corp.,* 2009 WL 2705830, *10 (E.D.Mich. 2009) *adopted in relevant part by* 2009 WL 2705827, *5 (E.D.Mich. 2009) (finding "Magistrate Judge['s]... recommendation that Plaintiff receive a proportionate award of attorney fees equal to his level of success to be both reasonable and fair"); *O'Connor v. Trans Union*, LLC, 2008 WL 4910670, *6 (E.D.Mich. 2008) (noting that "[d]etermining reasonable attorney fees is not an exact science," court reduces fees by 40%); *Garcia v. Oasis Legal Fin. Oper. Co.*, 608 F.Supp.2d 975, 980 (N.D. Ill. 1999) (reducing lodestar amount by 50% where degree of success obtained "while not entirely insignificant, is partial at best").

Based on Plaintiff's very limited success and his own partial culpability in extending the litigation, and comparing this case to similar consumer cases, I find that the claim for 292.18 hours is excessive and unreasonable. In computing a lodestar amount, it would therefore be appropriate to reduce the claimed attorney hours by 50%. At $300 per hour, this would result in a total attorney fee of $43, 827.00.

The Plaintiff's request for costs/additional charges in the amount of $3,500.17 is reasonable.  Therefore, the total award for attorney fees and costs would be $47,327.17.

-13-

## IV.    CONCLUSION

For these reasons, I recommend that Plaintiff's motion for attorney fees and costs [Doc. #67] be GRANTED IN PART, and that Plaintiff be awarded $43,827.00 in attorney fees and $3,500.17 in costs, for a total of $47,327.17.

Any objections to this Report and Recommendation must be filed  within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir.  1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.  1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


                                    s/ R. Steven Whalen
                                    R. STEVEN WHALEN
                                    UNITED STATES MAGISTRATE JUDGE

Dated:  June 30, 2011


-14-

**<u>PROOF OF SERVICE</u>**

I hereby certify that a copy of this Report and Recommendation was served upon

Counsel of Record on this date.

Dated: June 30, 2011                                 <u>s/ Lisa C. Bartlett      </u>
                                                                    Case Manager